**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**LOCAL 691, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, and Alfred W. Cors and William H. Jones, Respondents.**

No. 12594.

United States Court of Appeals Seventh Circuit.

Oct. 8, 1959.

Marcel Mallet-Prevost, Richard H. Frank, N. L. R. B., Office of Gen. Counsel, Jerome D. Fenton, Gen. Counsel, Thomas J. McDermott, Associate Gen. Counsel, Owsley Vose, Atty., N. L. R. B., Washington, D. C., for petitioner.

Edward J. Fillenwarth, Indianapolis, Ind., Gregg, Fillion, Fillenwarth & Hughes, Indianapolis, Ind., of counsel, for respondents.

Before HASTINGS, Chief Judge, and DUFFY and CASTLE, Circuit Judges.

CASTLE, Circuit Judge.

This case is before us on the petition of the National Labor Relations Board pursuant to Sec. 10, subd. e of the National Labor Relations Act (29 U.S.C.A. § 160, subd. e) for enforcement of its order issued against respondents. The Board in accord with the Trial Examiner, found that the respondents, Local 691, International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, and Alfred W. Cors, president of the Local and William H. Jones, business manager for the Local, had violated Sec. 8(b) (4) (A) of the Act (29 U.S.C.A. § 158(b) (4) (A)) by picketing the premises of Richmond Homes, Inc.[1] The Board found that by such picketing respondents induced and encouraged employees of suppliers of Richmond to engage in a concerted refusal to transport goods and material to Richmond with the object of (1) forcing or requiring suppliers of Richmond to cease doing business with Richmond, and, in turn, forcing or requiring Richmond to cease doing business with its contract carrier, Morgan Drive-Away, Inc.,[2] the primary employer, and (2) forcing or requiring self-employed persons to join respondents' union.

The Board's order requires respondents to cease and desist from such inducement and encouragement and directs posting of the usual notices and furnishing of the customary reports.

The finding and portion of the order relating to the objective of forcing or requiring self-employed persons to join respondents' union is predicated on a charge added to the complaint by amendment, over respondents' objection, at the close of the hearing before the Trial Examiner.

The contested issues are whether there was error in permitting the amendment and whether the Board's findings are supported by substantial evidence. The relevant portion of the National Labor Relations Act, 29 U.S.C.A. § 158(b) (4) (A) makes it an unfair labor practice for a labor organization or its agents:

"to engage in, or to induce or encourage the employees of any employer to engage in, a strike or a concerted refusal in the course of their employment to * * * transport or otherwise handle * * * goods, articles, materials, or commodities * * * where an object thereof is: (A) forcing or requiring any * * * self-employed person to join any labor * * * organization or any employer or other person * * * to cease doing business with any other person."

Richmond is engaged in the manufacture, sale and distribution of prefabricated buildings at Richmond, Indiana. Early in May of 1957 Richmond commenced to utilize Morgan for the contract hauling of its unassembled prefabricated homes. Morgan trailers were especially equipped for such purpose. For some years previous this contract hauling had been handled by I.R.C. & D. Freight Lines and Whitehouse Trucking Com-

---

1. Referred to herein as Richmond.

2. Referred to herein as Morgan.

pany, Inc.[3] The employees of I.R.C. & D. were members of Local 691. The employees of Whitehouse were members of a Toledo, Ohio, teamsters local. Morgan did not own the tractors used in its operation for Richmond, but leased them from the owners who did the driving themselves. The relationship between the owner-drivers with Morgan was that of independent contractor. They were, however, members of a Milwaukee, Wisconsin teamsters local. Morgan paid these owner-drivers less than what members of Local 691 received from I.R.C. & D. for hauling for Richmond.

Picketing by Local 691 was commenced at the truck entrance to Richmond's premises on June 10, 1957 and continued until terminated on the afternoon of June 12th as the result of a restraining order issued by the Circuit Court of Wayne County, Indiana. The pickets carried a sign which bore the legend:

> Morgan Drive-Away, Inc.
> And
> Richmond Homes, Inc.
> Are Unfair To
> Teamsters Local
> Union No. 691

Attached to the sign, beneath the legend, was a two page 8½ x 14 inch mimeographed leaflet in which Local 691 stated that Morgan's owner-drivers were being paid less than the members of Local 691 who had previously pulled the trailers, but sought to disavow any intent on the part of Local 691 to induce or encourage any employee or other person to join Local 691 or to "leave their employment" or "to refuse to do anything they ought to do". Copies of the leaflet were available for distribution by the pickets. During the period of the picketing approximately eight to ten of Morgan's trailers were on the premises of Richmond to be loaded. Richmond did not have warehouse facilities; the unassembled prefabricated houses were moved from its production line to trailers at its loading dock. After the trailers were loaded they were pulled off the premises by the contract hauler.

The picketing was effective in halting deliveries by employees of Richmond's suppliers.

The respondents argue that their activities and picketing were not in violation of 29 U.S.C.A. § 158(b) (4) (A) and in this connection contend that Local 691 had a dispute with Richmond concerning the transfer of the hauling contract to Morgan and that, in addition, the presence of Morgan's trailers on Richmond's premises justified the picketing.

The congressional objective embodied in the provisions of § 158 here involved is that of "shielding unoffending employers and others from pressures in controversies not their own" N. L. R. B. v. Denver Bldg. & Const. Trades Council, 341 U.S. 675, 692, 71 S.Ct. 943, 953, 95 L.Ed. 1284.

■ The Board found that Richmond was a neutral or secondary employer and the objective of the conduct and activities of the respondents was to force suppliers of Richmond to cease doing business with it and, in addition, to force Morgan's owner-drivers to join Local 691. There is substantial evidence to support the Board's conclusion. We do not deem it necessary to discuss or analyze the evidence in detail, but the following features are pertinent. Although respondents made an inquiry of Richmond's president early in May as to why the hauling contract had been transferred to Morgan it does not appear that at any time before or during the picketing that respondents made any demand on Richmond or engaged in any controversy or dispute with Richmond over the matter. All of the demands before and during the picketing were directed at Morgan and made to Morgan's representatives or owner-drivers. The Board, resolving a question of credibility adversely to respondents' witnesses, gave credence to testimony that early in May of 1957 respondent Cors inquired of Sam Wilson, Morgan's manager of the Richmond op-

3. Referred to herein as I.R.C. & D. and Whitehouse respectively.

eration "about getting the drivers in the union" and told him if Morgan expected to haul for Richmond it would have to have a contract signed with Local 691; that Cors handed Wilson a document which he said was the local contract; Wilson stated he would forward it to Morgan's Elkhart, Indiana office; that later Cors stopped Wilson on the street and asked if he had forwarded the agreement stating "He had to have the contract book signed or we couldn't haul"; that Cors called Morgan's executive vice president at Elkhart and advised that he would like to have the agreement signed and returned immediately or a picket would be placed around Richmond. On that same day Cors sent a telegram to the Milwaukee teamsters local requesting "transfer at once" to local 691 of individuals referred to as members working at Richmond for Morgan. None of these owner-drivers of Morgan had requested such transfer. Respondent Jones, early in June, told one of Morgan's owner-drivers that he wanted Morgan to contact him and if they didn't that picketing would commence the following week. Jones displayed the sign which had been prepared for that purpose.

In our opinion the Board was justified in finding that although the respondents were not actually engaged in a controversy with Richmond the picketing had as an objective the stopping of deliveries of supplies to Richmond's plant. The sign carried by the pickets proclaimed that Richmond was unfair to Local 691. It is likewise our opinion that there was evidence to support a conclusion that at its inception and throughout the picketing the controversy with Morgan involved the execution of a contract with Local 691 to bring Morgan's owner-drivers into the Local. It is our conclusion that there was substantial evidence to support the Board's findings and conclusions with respect to the objectives and purposes of respondents' activities. The facts bring the case within the reasoning of our decision in N. L. R. B. v. Chauffeurs, Teamsters, Warehousemen & Helpers, Local Union No. 135, 7 Cir.,

212 F.2d 216 and cases therein cited rather than the cases relied upon by respondents as authorizing picketing in certain common-situs situations.

■ We are of the further opinion that the Board did not err in permitting the amendment to the complaint. The amendment was necessary to a full presentation and consideration of the merits of the proceeding. From the first day of the three day hearing testimony had been received without objection on the issue involved in the amendment. Respondents were not taken by surprise. A ten day extension of time because of the amendment was proffered to respondents. The extension was declined, and there was no request for a longer extension. In our view the amendment was authorized under Rule 15(b) of the Federal Rules of Civil Procedure (28 U.S. C.A. Rule 15(b)).

The Board's petition for enforcement of its order is allowed.